# CIRCUIT COURT OF BALTIMORE CITY.

Filed April 24, 1916.

## HARRY ADES
## VS.
## UNITED UMBRELLA COMPANY.

*James W. Chapman, Jr.,* for creditors.

*John L. G. Lee* for receivers.

BOND, J.—

The case presented by the exceptions and the petitions, and by the testimony taken upon them, appears to be this:

All claims shown by the books to be possible had been filed during the year previous to the filing of this account. The creditors had been given assurances by Ades, the receiver, and president of the corporation, that they would all be paid in full from the assets in hand. And when a dividend of 66 per cent was declared it was viewed and accepted as the first instalment of payment in full. No examination of the account was then made by the creditors; and in the absence of timely exceptions the amount was finally ratified and confirmed. Later, however, when it was reported that the remaining dividends would be inconsiderable, and that the assets would fall far short of making up payment in full, the chief creditors made an investigation. And then they discovered the inclusion of the receiver's own claims, which they had not known of, and to which they now object. After the papers had been referred to the auditor for his account, it appears, and when he had proceeded to the point of making up his figures, the receiver Ades filed as a claim on his own behalf a note of the corporation for $4,500. In the bill of complaint with which he had instituted this proceeding he had described himself as a creditor only upon a note of $1,900, a distinct claim; and the books of the corporation, and an audit made of them, alike failed to show the existence of any note for $4,500. Furthermore, it was found that Ades had filed claims for counsel fees paid for services outside of this proceeding, and some smaller claims, the propriety of which is questioned. These facts and other circumstances incident to the conduct of the receivership by Ades have aroused suspicion and doubt of his trustworthiness as a receiver; and in addition to filing exceptions to the claims objected to some of the creditors have prayed that he be removed from the position of receiver.

The note for $4,500 is one drawn by the corporation to its own order and indorsed by itself in blank. It is clear, I think, that Ades intended only to put in the shape of a note some part, at least, of the liability of the corporation to him, as it might exist from time to time, by reason of his indorsement on its outstanding notes. Ades' own testimony is that having started the practice of supporting the credit

of the company by putting his personal indorsements on its notes, he thought it wise to fortify his resulting rights by this note. So, whatever might have been the effect of the note in the hands of some bona fide transferee, had there been a transfer beyond Ades, it seems clear that in Ades' hands it adds nothing to his position and rights as indorser on the company's notes. Those rights include rights of subrogation only against the maker, and do not give the indorser the privilege of duplicating the claims against the maker's assets in insolvency to the extent of the indorser's loss on the indorsements.

"If the creditor proves his debt and receives his proportionate share of the bankrupt's estate with other creditors, the surety or indorser has no provable claim. For, were he also permitted to prove the debt, it would be to allow the same debt to be proved, in part at least, twice." 1 Loveland on Bankruptcy, Sec. 304.

In this case the banks which held the company's notes have proved their claims as holders, and have received their dividends. Just what Ades has paid to make up the deficiencies does not appear. His liability could be calculated from the figures in hand. His testimony is that he turned over to the banks the dividend he received on account of this $4,500 note, and so added to their own dividends and diminished his loss on the indorsements. But upon the principles I have outlined I can only come to the conclusion that he has no claim by reason of his holding this note for $4,500. The other objections to the note need not be dwelt upon.

So with the claims for attorneys' fees paid by Ades to Mr. Sappington and Mr. Lee for resisting and settling the bankruptcy proceeding. He charges these outlays against the corporation, and files claims for them in the receivership, upon the belief that the services rendered helped to preserve the assets and thus redounded to the benefit of the creditors. But the Court did not order the incurring of any such expense, and could not have ordered it; and it cannot ratify it now. The expenditures were not on behalf of the receivership. And they should not be collected through this proceeding. Other expenditures for this same

purpose, $6.25 for telephone charges and $76.18 for personal expenses in resisting the bankruptcy proceeding, are for the same reason not chargeable against the assets in the receiver's hands.

The remaining items objected to, while questionable, I do not see my way clear to disallow upon this testimony, especially after the ratification of the account.

The ratification of the account is, indeed, a fact which counsel for Ades oppose to the present review and disallowance of any of the questioned claims. Ordinarily, of course, final ratification of an account is an adjudication of each item in it. But it does not put the items beyond the reach of the Court under all circumstances; and claims by a receiver himself, which have escaped the more timely objections of the creditors by reason of the circumstances here outlined, must, I think, be still open to revision by the Court. The exceptions to the allowance of the claim upon the $4,500 note, to reimbursement for the fees paid to Mr. Sappington and Mr. Lee for services in connection with the bankruptcy proceeding and for telephone charges and personal expenses in the same proceeding, will, therefore, be sustained.

Now, for the petitions praying the removal of Ades as receiver, these seem to be the facts, as far as I can see them through the medium of the testimony: Ades was overzealous in his own behalf; to such an extent that the Court may have been better satisfied with some other person in his position. I cannot make out from the testimony any dishonesty or incapacity. The testimony, I thought, rather allayed the suspicions which had been aroused by the facts as they previously appeared. And he has done about all the work that was to be done in the course of the receivership. Perhaps the removal by the Court of one of its receivers ought to be possible without its carrying any implication damaging to the man; but it is hardly so. And it should not be done except upon serious cause. I do not feel justified in removing this receiver, and he will be accordingly continued, and the petitions will be dismissed when he refunds the amounts found improperly charged and the dividend upon the $4,500 note.